Filed 11/17/20  In re J.G. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re J.G. et al., Persons Coming Under the Juvenile Court Law. | B301707<br><br>(Los Angeles County Super. Ct. Nos. 19CCJP04105A & B; 19CCJP04089A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>MYESHA S.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of
Los Angeles County, Rashida A. Adams, Judge.  We reverse one

of the jurisdiction findings as to J.G. and T.J. (19CCJP04105A & B). In all other respects the jurisdiction findings and disposition orders in both dependency cases are affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Alleging domestic violence and substance abuse, the Los Angeles County Department of Children and Family Services (Department) in late June 2019 filed a petition pursuant to Welfare and Institutions Code section 300[1] concerning Myesha S.'s two sons, 15-year-old J.G. and 13-year-old T.J., and a second petition as to the four children for whom she serves as legal guardian, 16-year-old Monique C., 15-year-old twins Evette C. and Evon C., and three-year-old Josiah C., Monique's son.[2] The juvenile court sustained both petitions, declared the children dependents of the juvenile court and removed them from Myesha's custody. Emphasizing her participation in a variety of programs prior to the jurisdiction hearings and her decision to sever her relationship with her long-time boyfriend Dennis J., the man responsible for the domestic violence at issue in the cases,

---

[1]     Statutory references are to this code.

[2]     The Department's detention report indicated Nina W., the mother of Monique, Evette and Evon, was Myesha's sister-in-law and a close friend. Myesha became the children's legal guardian in June 2018.

Myesha contends on appeal there was insufficient evidence to support the court's finding her past conduct created a substantial risk of future physical harm to the children. Alternatively, even if dependency jurisdiction was appropriate, she contends the court erred in finding by clear and convincing evidence that no reasonable means existed to protect the children without removing them from her care.[3] We reverse one of the jurisdiction findings as to J.G. and T.J. but otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Children's Detention*

The Department received a report in May 2019 that Dennis J. had physically abused Myesha in front of Dennis J.'s six-year-old son and the reporting party's six-year-old son. When interviewed by one of the Department's social workers several weeks later, Myesha said she had ended her relationship with Dennis J. two months before but nonetheless had gone to his home to braid his hair. Dennis J. became enraged when Myesha disclosed she was romantically involved with someone else, and he hit her several times. Myesha locked herself in the bathroom to prevent further injury. Although Myesha initially claimed this was the only violent incident she had with Dennis J., she

---

[3] In her opening brief Myesha also argues the minute order from the disposition hearing for Monique, Evette, Evon and Josiah inaccurately stated the court ordered her visitation with these children to be monitored, rather than unmonitored. We have granted the Department's request to take judicial notice of the juvenile court's June 1, 2020 order correcting its disposition order nunc pro tunc to reflect Myesha's visits are to be unmonitored. This issue, therefore, is moot.

subsequently acknowledged she had been physically abused by Dennis J. "off and on for a few years."

Thereafter, Myesha submitted to a drug test that was positive for methamphetamine and marijuana; the test results also indicated Myesha had diluted her sample. Myesha denied using methamphetamine but admitted she regularly used marijuana, insisting she never smoked in front of the children. Additional interviews included a statement from T.J.'s father that Myesha had said she smoked "primos" (a combination of marijuana and cocaine). On June 21, 2019 Myesha advised the Department she had checked into an outpatient program for drug and alcohol abuse and claimed she had discovered the methamphetamine in her system was due to consuming Jello shots at a party.

On June 24, 2019 the juvenile court authorized the Department to detain the children from Myesha. J.G. and T.J. were released to their respective fathers. The Department could not locate Monique, Evette, Evon or Josiah. It was ultimately learned that Myesha had fled with them to Las Vegas to avoid their detention. Monique then ran away from the relative's home where they were staying in Las Vegas, taking Josiah with her.

The Department filed petitions as to all six children pursuant to section 300, subdivisions (a) and (b)(1), alleging the domestic violence between Dennis J. and Myesha endangered the children's physical health and safety. The petition specifically referred to the May 2019 incident, during which Dennis J. had hit Myesha, causing a two-inch cut on her face, and additionally alleged, "[o]n prior occasions, [Myesha's] male companion struck [Myesha]." The petitions also alleged under section 300, subdivision (b)(1), that Myesha was a current user of

4

amphetamine, methamphetamine and marijuana, which rendered her incapable of regular care of the children.

At detention hearings on June 28, 2019 all six children were detained from Myesha, and her visits with the children were ordered to be monitored.  J.G. and T.J. remained released to their fathers.  Protective custody warrants were issued for the four children under Myesha's legal guardianship, and an arrest warrant was issued for Myesha.  Evette and Evon were located and detained on July 2, 2019.  Monique and Josiah remained at large.  They were ultimately detained on August 19, 2019.

The Department filed first amended petitions in both cases on August 20, 2019, adding language to the substance abuse count alleging Myesha had "a two year history of illicit drug abuse including ecstasy and is a frequent user of amphetamine, methamphetamine, marijuana, ecstasy and alcohol," which rendered her incapable of providing regular care for the children.[4]

2. *The Jurisdiction/Disposition Reports*

The Department filed jurisdiction/disposition reports in the two cases on August 20, 2019 that were substantially identical except for the biographical information regarding the children and their various paternal and maternal relatives.  The reports

---

[4]     On September 3, 2019 the Department filed a second amended petition on behalf of J.G. and T.J. adding counts under section 300, subdivisions (b)(1) and (g), alleging in identical language that J.G.'s father was unwilling to care for him and that "[s]uch unwillingness to provide the child with the basic necessities of life including, but not limited to, food, clothing and shelter, endangers the child's physical and emotional health and safety and places the child at risk of physical and emotional harm and damage."

detailed an August 16, 2019 interview with Myesha conducted by one of the Department's dependency investigators.

Myesha described the incident at Dennis J.'s house that triggered the investigation, stating Dennis J. had choked her, dragged her and "knocked me out three times."  She had previously explained he hit her in the face several times, although she could not recall exactly how many.  Dennis J.'s six-year-old son was present ("peeking in") during the episode.

When asked about her history of domestic violence with Dennis J., Myesha said that about a month before the May incident Dennis J. had hit her while they were together in a car.  She said the violence had only started recently when she and Dennis J. began using drugs.  She explained it was Dennis J. who had introduced her to ecstasy.  Myesha said she had now stopped all contact with Dennis J.

Myesha insisted the children had never seen any of the violent altercations between Dennis J. and her, but, after initial denials, acknowledged they were probably aware of the violence and had seen her injuries.  Several of the children confirmed hearing about the most recent episode of violence and seeing Myesha's injuries.

Asked specifically about drug use, Myesha said she had been using ecstasy for two years.  She initially used it to stay alert at work, approximately two or three times a week, but also started using it after work (recreationally).  Myesha denied using methamphetamine, but then admitted, although she was not a "crystal meth head," there was methamphetamine in the pills she took.  Myesha regularly smoked marijuana, having started years earlier after an injury, but claimed she had recently stopped.  She also insisted she did not smoke in front of the children.

6

Generally, she would go outside to her balcony and then, when finished, return to the children. Myesha said she did not drink much alcohol, perhaps wine once a week.

A treatment plan attached to the jurisdiction/disposition report, prepared July 9, 2019 and signed by Myesha and a counselor from the House of Uhuru outpatient drug program, stated, "Patient [Myesha] reported that she has 35 years history of smoking Marijuana and 2 years history of Amphetamines abuse."

Myesha provided the dependency investigator with copies of her certificates of completion of a domestic violence program and a parenting program, as well as copies of the sign-in sheet for a substance abuse program.

Dennis J., interviewed by the dependency investigator by telephone on August 15, 2019, said he and Myesha had a long relationship (13 years) that had just ended, but indicated the two of them still continued to see each other. He denied there had ever been incidents of domestic violence between them (although he conceded he and the mother of his child "had some issues") and specifically claimed Myesha's allegations concerning the day she came to braid his hair were false.

Tommie J., T.J.'s father, described Myesha as an alcoholic and said she regularly smoked marijuana. T.J.'s paternal aunt recounted numerous episodes of domestic violence between Dennis J. and Myesha and explained, because Myesha's older son J.G. was a known gang member, no one would call the police.

The Department's assessment was that Myesha had an extensive and unresolved substance abuse issue that needed to be addressed to create a safe environment for the children. The Department acknowledged Myesha's participation in a substance

abuse treatment program, but noted her enrollment in the program was relatively recent and there were only a few drug test results after the June 12, 2019 positive test for methamphetamine and marijuana. Two tests had been positive for marijuana; Myesha had missed a test scheduled for August 12, 2019.

### 3. *The Jurisdiction Hearing for Monique, Evette, Evon and Josiah*

At the jurisdiction hearing for Monique, Evette, Evon and Josiah on September 4, 2019, after the court admitted into evidence the Department's reports and the documents Myesha presented concerning her program participation, Myesha's counsel asked the court to dismiss the petition. Children's counsel asked the court to sustain the domestic violence count under section 300, subdivision (b)(1), but not subdivision (a), and to sustain the count alleging substance abuse.[5]

The court sustained both section 300, subdivision (b)(1), counts and dismissed the subdivision (a) count, finding the Department had not carried its burden of proof as to the latter charge, explaining the evidence was that the children were not present during the violent altercations but were aware of them. The court continued, "This kind of violence, which the children indicated occurred when the legal guardian and [Dennis J.] were in and out of each other's homes, is the kind of conduct which places the children at substantial risk of serious physical harm." As for the substance abuse count, the court found the evidence, including from Myesha's own statements, established ongoing

---

[5] Monique, Evette and Evon were jointly represented; Josiah had separate counsel. Both lawyers joined in this recommendation.

8

substance use and abuse and, further, that the children were in Myesha's care while she was under the influence.[6] The disposition hearing was continued to October 17, 2019 and then again to November 1, 2019.

4. *The Jurisdiction and Disposition Hearings for J.G. and T.J.*

The court conducted the jurisdiction and disposition hearings for J.G. and T.J. on October 17, 2019.[7] In addition to the material the court had at the jurisdiction hearing the prior month for Monique, Evette, Evon and Josiah, the Department submitted a last minute information report, dated October 17, 2019. The Department stated a corrected letter from Myesha's drug treatment program indicated that, as of September 3, 2019, she had been in the program for 71 days (not 90 days as previously reported). Myesha's drug tests continued to show positive for marijuana during June, July and August, but were negative in September and October. (She missed a test on September 9, 2019.) Myesha provided the court with a more recent letter from her program, dated October 15, 2019, which reported she continued to demonstrate positive behavior in the program with full participation in all treatment services. Myesha

---

[6] While finding that Myesha's conduct endangered all the children, the court emphasized Josiah was "of tender years."

[7] The jurisdiction hearing for J.G. and T.J. had been scheduled for September 4, 2019, the same day as the jurisdiction hearing for Monique, Evette, Evon and Josiah, but was continued after the Department filed a second amended petition to include allegations regarding the difficulties between J.G. and his father. (See footnote 4, above.)

also submitted a letter reporting she was actively participating in therapy.

T.J. and J.G.'s counsel joined Myesha in requesting the court dismiss the section 300 petition in its entirety.

The court sustained the domestic violence counts under both section 300, subdivisions (a) and (b)(1),[8] and the substance abuse count under section 300, subdivision (b)(1).[9] The court observed that the evidence established "not only a lengthy and serious history of ongoing violence perpetrated by the companion, Dennis J[.], on the mother but also a long-standing significant and severe substance abuse problem suffered by the mother." The court noted, although T.J. and J.G. were teenagers, "the extent of the mother being under the influence while the children were in her care remains significant in that, as indicated in the evidence, it was of such a nature that it prevented her from providing adequate care and supervision even of older children." The court commended Myesha's recent steps to address these issues, but emphasized the problems had existed for a long time prior to the Department's intervention.

Proceeding immediately to disposition, the court declared both boys dependents of the court and found by clear and

---

[8] Neither the parties nor the court addressed any inconsistency between the court's determination on September 4, 2019 that the Department's evidence supported the domestic violence count under section 300, subdivision (b)(1), but not subdivision (a), and its finding, based on the identical evidence, sustaining both domestic violence counts on October 17, 2019.

[9] The court also sustained the additional count regarding J.G.'s father under section 300, subdivision (b)(1), but dismissed the subdivision (g) count.

convincing evidence there would be substantial danger to their physical health or safety if returned to Myesha's physical custody and, as to J.G., to his father's custody, and further found there were no reasonable means to protect them without removal. The court identified as the basis for its determination the facts as found true in the sustained petition and again stated the domestic violence and substance abuse issues were significant, severe and long-standing. The court ordered J.G. suitably placed and released T.J. to his father. The Department was ordered to provide reunification services to Myesha, including unmonitored daytime visitation; Myesha was given credit for the programs in which she had already participated.

> 5. *The Disposition Hearing for Monique, Evette, Evon and Josiah*

Children's counsel joined Myesha in urging the court to allow the children to return home at the November 1, 2019 disposition hearing.[10] Nonetheless, the court declared all four children dependents of the court; removed them from Myesha's custody based on its findings, by clear and convincing evidence, there would be a substantial danger to their physical health and safety if returned home and there were no reasonable means by which they could be protected without removal; and ordered the Department to provide Myesha with reunification services. As it had two weeks earlier at the disposition hearing for J.G. and T.J., the court referred to the extreme domestic violence and Myesha's significant substance abuse issues, as found true in the sustained petition. The court also expressed concern about the children's flight to avoid detention at the outset of the dependency

---

[10] Nina W.'s counsel also joined in the request.

11

proceedings and Myesha's active role in that episode. The court again commended Myesha's recent efforts to resolve her problems, but noted she was still at the initial stages of treatment when compared with the length of time the substance abuse and domestic violence had been going on.

Myesha filed timely notices of appeal in both cases. We consolidated the two appeals at Myesha's request.

## DISCUSSION

### 1. *Governing Law*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)

Section 300, subdivision (a), provides that jurisdiction may be assumed if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally by the child's parent or guardian. "Nonaccidental" generally means a parent or guardian "acted intentionally or willfully." (*In re R.T.* (2017) 3 Cal.5th 622, 629.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or

12

inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child . . . ." A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.*, *supra*, 3 Cal.5th at p. 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.*, at p. 165.) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In Kadence P.*, at p. 1384.)

Before the court may order a child removed from the physical custody of a parent with whom the child was residing at the time the dependency proceedings were initiated, it must find

13

by clear and convincing evidence that the child would be at substantial risk of physical or emotional harm if returned home and there are no reasonable means by which the child can be protected without removal.  (§ 361, subd. (c); *In re T.V.* (2013) 217 Cal.App.4th 126, 135; see *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347.)  "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child."  (*In re T.V.*, at pp. 135-136.)

      2.  *Standard of Review*

      "'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  [Citation.]  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'"  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate.  (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

      In evaluating the propriety of a disposition order removing a child from a parent or guardian pursuant to section 361, in view of the requirement the juvenile court make the requisite findings based on clear and convincing evidence, we "must

14

determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

  3.  *Substantial Evidence Supports the Jurisdiction Findings Under Section 300, Subdivision (b)(1)*

Myesha does not deny her history of substance abuse or the episodes of domestic violence with Dennis J. but argues the evidence did not establish any of the children was at current risk of harm by the time of the jurisdiction hearings in September and November 2019.  Substantial evidence supports the juvenile court's jurisdiction findings on both grounds under section 300, subdivision (b)(1).

  a.  *Domestic violence*

Exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)(1).  (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.)  "'Both common sense and expert opinion indicate spousal abuse is detrimental to children.'" (*In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved on another ground in *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1010, fn. 7; see *In re Heather A.* (1996) 52 Cal.App.4th 183, 194 ["[D]omestic violence in the same household where children are living *is* neglect; it is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.  Such neglect *causes* the risk"]; see also *In re T.V.*, *supra*, 217 Cal.App.4th at p. 135 ["[e]ven though [the child] had not been physically harmed, the cycle of violence between the parents constituted a failure to protect her"].)

Unlike the facts in the cases upon which Myesha relies (see, e.g., *In re M.W.* (2015) 238 Cal.App.4th 1444, 1454 [single incident of domestic violence more than seven years before the jurisdiction hearing]; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 [violence had occurred at least two, and probably seven, years before the filing of the dependency petition]), the violence here was both recent and recurring. In addition, Myesha's claim to have severed her relationship with Dennis J. by the time of the jurisdiction hearings did not negate the continuing risk of harm to the children. There was evidence before the court Myesha and Dennis J. had a history of breaking up and reconciling; and in discussions with the Department Myesha even identified Dennis J. as part of her support network.

Although the children had not witnessed Dennis J. striking Myesha, they were well aware the violence was occurring, which under the circumstances here was sufficient to support a jurisdiction finding. (See *In re T.V.*, *supra*, 217 Cal.App.4th at pp. 134-135 [although child was not present at the time of the incident that led to dependency proceedings, her awareness of it and the likelihood of continuing domestic violence between her parents placed her at risk of harm].) Moreover, the fact the precipitating incident in these cases occurred in the presence of Dennis J.'s son confirmed the risk that future episodes of violence could occur in the direct presence of Myesha's children.

In sum, substantial evidence supported the court's finding of jurisdiction under section 300, subdivision (b)(1), based on domestic violence between Myesha and Dennis J.

b. *Substance abuse*

Myesha admitted taking ecstasy for more than two years, initially to help her stay awake at work; later, recreationally. As

discussed, the outpatient treatment plan developed by one of her service providers explained she was being treated for a substance abuse disorder, documented amphetamine abuse and reported she had been smoking marijuana for 35 years. When interviewed for the Department's jurisdiction/disposition reports, Myesha expressed her desire to continue in treatment.

Others interviewed by the Department, as reflected in the jurisdiction/disposition reports, confirmed Myesha's history of drug use and indicated her behavior was impacted by it. Dennis J. described having to take the children to school when Myesha overslept, which he believed was related to her drug use. Several of the children (particularly Evette and Evon) reported Myesha "got crazy" or aggressive and verbally abusive when intoxicated. This evidence amply supported the juvenile court's findings that Myesha suffered from significant substance abuse issues. (See *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726 [court may find parent is current substance abuser even if she has not been diagnosed by a medical professional and does not fall within one of the specific categories of substance use disorders identified in the Diagnostic and Statistical Manual of Mental Disorders]; *In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218 [same].) Given the evidence establishing the extended length and severity of Myesha's drug problem, the court's finding her recent participation in a treatment program had not satisfactorily resolved the problem was also adequately supported.

Even if she needed to continue treatment to control her substance abuse, Myesha contends, there was insufficient evidence her drug use created any specific risk of harm to the children. (See *In re Rebecca C.*, *supra*, 228 Cal.App.4th at

17

pp. 727-728 [physical harm to a child is not presumed from a parent's substance abuse; it remains for the Department to prove causation and harm].)  Yet, notwithstanding Myesha's insistence she never used drugs in the presence of the children, the evidence established she often occupied the role of caregiver immediately after using; and the children described in detail Myesha's aggressive behavior when intoxicated (whether under the influence of drugs or alcohol), including one incident in which Myesha threw an empty alcohol bottle at Dennis J. and his son as they drove away from her house.  This conduct was a sufficient link between Myesha's substance abuse and the risk of harm to the children to support the jurisdiction finding.[11]

   4. *There Is Insufficient Evidence To Support a Finding Under Section 300, Subdivision (a) as to J.G. and T.J.*

Incidents of domestic violence between a child's parents may support a jurisdiction finding under section 300, subdivision (a).  (See *In re Giovanni F., supra*, 184 Cal.App.4th at pp. 598-599.)  For example, if a father strikes an infant's mother while she is holding the child or an older child intervenes during a fight to protect her mother from her father's abuse, the injury or risk of harm to the child may be properly viewed as nonaccidental.  (See, e.g., *In re M.M.* (2015) 240 Cal.App.4th 703, 720.)  The somewhat more common potential for accidental injury

_____

[11]     Josiah had just turned two years old at the time of the jurisdiction hearing.  As to him, a child of "tender years," "'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.'"  (*In re Christopher R., supra*, 225 Cal.App.4th at p. 1219; accord, *In re Kadence P., supra*, 241 Cal.App.4th at p. 1385.)

during parents' physically violent fights in the presence of bystander children, however, constitutes a failure or inability to protect the child, creating the potential for dependency jurisdiction under section 300, subdivision (b)(1) (and possibly section 300, subdivision (c), as well), but not subdivision (a).[12]

Under any domestic violence scenario, however, section 300, subdivision (a), applies only when the physical harm or risk of physical harm at issue has been inflicted "by the child's parent or guardian." Here, the sustained allegation in the second amended complaint relating to L.G. and T.J. was that "mother's male companion" had engaged in violent physical altercations with Myesha in which he was the aggressor. That allegation, even though proved, is not a proper basis for jurisdiction under section 300, subdivision (a).

5. *Substantial Evidence Supports the Removal Orders*

Noting all the children other than Josiah are teenagers capable of protecting themselves, Myesha argues requiring her to continue with her treatment programs, ordering in-home services and authorizing the Department to make unannounced visits would have been a reasonable way to protect the children without removing them from her physical custody. Therefore, she contends, under section 361, subdivision (c), it was error to order

_____

[12] Although acts of domestic violence are themselves nonaccidental (see *In re Giovanni F.*, s*upra*, 184 Cal.App.4th at p. 600), section 300, subdivision (a), requires a risk of physical injury "inflicted nonaccidentally upon the child." An unintended injury to a bystander child—for example, due to an object thrown by one parent at another during an argument—does not satisfy that statutory requirement. (But see *In re Giovanni F.*, at pp. 600-601 [attacks on mother in child's presence supported jurisdiction under section 300, subdivision (a)].)

their removal.  Myesha's suggestion might be sound if her substance abuse were the only issue presented to the juvenile court.  But the children had a far greater need for protection.

As the juvenile court emphasized, Myesha and Dennis J. had an extended history of domestic violence; and the final episode precipitating the current dependency proceedings was severe.  This cycle of violence, combined with their history of separating and reconciling, created a significant risk of future harm to the children (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 135 [cycle of violence between parents constitutes a failure to protect their child]), a risk exacerbated by Myesha's refusal to acknowledge the seriousness of the problem.  (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 [parent's denial of domestic violence increases the risk of it recurring]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].)  As disclosed in her interviews with the Department, Myesha attempted to minimize the significance of her violent arguments with Dennis J., insisting, contrary to the facts, that the children were unaware of them and had never seen her injuries.  Indeed, the only regret Myesha seemed to express was that she had been unable to return the violence, telling the dependency investigator, "I can't fight him.  I'm too weak.  I wish I did know how to fight.  I would've got him good."

Combined with the not fully resolved drug problem (Myesha continued to test positive for marijuana use notwithstanding her treatment protocol calling for total abstinence), which Myesha conceded contributed to the domestic violence issues, this record, viewed as a whole, contains substantial evidence from which the juvenile court could find by

20

clear and convincing evidence that there were no reasonable means to protect the children without removing them from Myesha's custody.

## DISPOSITION

The jurisdiction finding under section 300, subdivision (a), as to J.G. and T.J. (19CCJP04105A-B) is reversed. In all other respects the jurisdiction findings and disposition orders in both dependency cases are affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.


21